J-S24045-22

2022 PA Super 143

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
 :  PENNSYLVANIA
 :
v.  :
 :
 :
 :
ANTHONY JOSEPH SULPIZIO  :
 :
Appellant  :  No. 1892 EDA 2021

Appeal from the Judgment of Sentence Entered August 12, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0002776-2020

BEFORE:  PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:         **FILED AUGUST 15, 2022**

Anthony Joseph Sulpizio (Sulpizio) appeals from the August 12, 2021 judgment of sentence imposed by the Court of Common Pleas of Northampton County (trial court) following his non-jury trial conviction for criminal mischief.[1]  We affirm.

**I.**

We glean the following facts from the certified record.  On July 7, 2020, Sulpizio was distributing pro-life literature outside of the Allentown Women's Center (AWC).  Evan Lempke (Lempke), a security coordinator for AWC, arrived at the clinic in his vehicle and signaled to turn into the parking lot.  He noticed Sulpizio standing on the side of the driveway near the curb.  Lempke

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3304(a)(5).

recognized Sulpizio because he had previously interacted with him during his work at AWC. As Lempke turned into the parking lot, he heard a "large bang" on the side of his car. Notes of Testimony, 8/12/21, at 29. He continued to pull into the parking lot because he "did not want to be near [Sulpizio]" before checking his car and observing a dent on his passenger-side rear door. *Id.* Lempke testified that Sulpizio had "interacted with" his vehicle on prior occasions. *Id.* Prior to this incident, Lempke's car had a scratch but no dents.

Officer Stephen Vas (Officer Vas) reported to the scene. Upon arrival, he spoke with Sulpizio, who immediately told him that he hit Lempke's car with his hand because it cut too close to him when entering the parking lot. Officer Vas recovered surveillance footage from AWC that captured the incident. The video depicts Lempke's vehicle turning into the parking lot and Sulpizio reaching out to strike the vehicle while standing in the driveway. Sulpizio then continued to walk back and forth in the driveway. Officer Vas observed two indentations next to the door handle on the right side of Lempke's vehicle. Officer Vas spoke to Sulpizio once more before leaving the scene, and Sulpizio accused a second AWC employee of attempting to run him over that morning.[2]

---

[2] The Commonwealth introduced body camera footage at trial that included the responding officers' conversations with Sulpizio and Lempke and documented the dents to the vehicle.

To establish the amount of damage caused to Lempke's vehicle, the Commonwealth presented testimony from Orlando Camargo (Camargo), a collision estimator at Vinart Collision Center. Camargo had worked as an estimator for eight years and prepared thousands of estimates in that time. He prepared the estimate for the cost to repair the damage to the right rear door of Lempke's vehicle. The estimate included repair hours, paint time and materials for a total cost of $1,226.95. Camargo testified to the details of the necessary work: "So the area would have to be sanded and grinded. The metal is straightened out. There's a thin layer of body filler, sanded and primer. Then it gets sent off to paint." *Id.* at 41. The estimate did not include costs for any additional work.

On cross-examination, Camargo explained specific portions of the estimate. He said that the roof panel, bumper and taillight had to be removed to properly paint the door panel. He did not recall whether there were any additional scratches on the door panel, but said that if there had been "actual damage" it would have been noted on the estimate. *Id.* at 44. Camargo testified that a paintless dent removal method of repair could be used for smaller dents, but the conventional repair method was used in this case so that the colors of the old and new paint would match. He said that his company would not have provided a less detailed repair because it offered a lifetime warranty on all work performed.

Sulpizio testified that he was working as a pro-life counselor at AWC on the day of the incident. He said that he usually walks back and forth in front of AWC and attempts to approach vehicles that are entering the parking lot. He was beginning to walk across the driveway when he saw Lempke's vehicle turn into the parking lot and accelerate. He testified that the vehicle "[g]ot near [him] and cut it rather close" even though there was ample room to maneuver around him. *Id.* at 69. Sulpizio said that he was afraid for his safety because the car passed within inches of him and was moving quickly, so he "pushed back against the car to make space" with the heel of his palm. *Id.* at 70. He said that he touched the car to prevent it from running over his ankle or side-swiping him, but the momentary contact did not cause any damage to the vehicle. After Lempke's vehicle pulled away, Sulpizio returned to walking back and forth in front of AWC. Sulpizio said that he regularly attempts to counsel women in front of AWC and had seen Lempke there before.

On cross-examination, he testified that while his primary purpose at AWC is to talk to its patients, he has also "called out to the staff" and "[told] them that they should do—use their skills for good rather than evil. So there's a slight protest aspect of it." *Id.* at 75. He believed Lempke was trying to intimidate him by driving as closely as possible to him while turning into the driveway, and testified that another AWC employee had done the same thing earlier that day. He said that he remained in the driveway when he saw

Lempke's vehicle turning in because as a pedestrian, he had the right-of-way. He did not move out of the way because he "didn't want to be intimidated by Lempke." *Id.* at 87.[3]

The trial court found Sulpizio guilty of criminal mischief graded as a second-degree misdemeanor and he proceeded immediately to sentencing. Sulpizio argued for a sentence of only restitution based on his age of 63 and lack of criminal history, drug or alcohol issues, and mental health diagnoses. The Commonwealth requested a period of probation in addition to restitution and no contact with AWC staff or their vehicles. Lempke offered a victim impact statement, explaining that he had one similar interaction with Sulpizio prior to the incident in question, and that Sulpizio's interactions with other staff at AWC had escalated in the weeks following this incident. He said that Sulpizio had been working outside of AWC since the 1980s and that he believed that he would continue to interact with staff like this in the future.

In his allocution, Sulpizio stated that Lempke had driven his car at him on several occasions, both before and after the incident at issue. He said that for one of those prior interactions, he was cited for a summary offense and ultimately found not guilty. He contended that the employees of AWC did not like him because of his work outside the building. In addition, Sulpizio's son

_____

[3] Sulpizio also presented two character witnesses who testified to his reputation in the community for being peaceful, non-violent and non-confrontational while working outside AWC.

testified that he is a good father, peaceful person, and had always tried to avoid physical or verbal confrontations with the employees of AWC. He contended that his father had previously been physically and verbally assaulted by AWC employees. He said that his father had ACL, MCL and LCL surgery two-and-a-half years earlier and requested a sentence of restitution without probation.

The Commonwealth reiterated that it was not requesting the trial court bar Sulpizio from attempting to counsel women outside AWC, but only that he have no physical contact with employees or their vehicles. It argued that Sulpizio's presentation at sentencing suggested that he would continue to have issues with AWC and that a period of supervision was necessary.

The trial court began by stating that it found Sulpizio guilty based on viewing the video of the incident and assessing the credibility of the witnesses, and that it disagreed with Sulpizio's recounting of the events. It considered that he had no prior criminal history but stated that it "ha[d] concerns that despite your reasons for being there that you act in a non-criminal manner when you are on site." *Id.* at 111. The trial court then sentenced him to two years of "nominal probation," with the conditions that he attend anger management, have no contact with Lempke and not enter the AWC premises. *Id.* at 111-12. It then asked Sulpizio if he could cite any case law that would prohibit the trial court from barring him from entering AWC's premises.

Counsel responded that "there is a longstanding agreement in which he is allowed to be, not on the premises, but in the right-of-way area going into the premises. . . . He has no interest in being inside the parking lot, in the building, adjacent to the building." *Id.* at 112-13. He requested that the trial court allow him to continue to enter that right-of-way while having no contact with employees of AWC.

The trial court responded:

So clearly he has no business standing in the middle of a driveway and crossing back and forth as traffic is coming. He testified that he knows the vehicle, or knows Mr. Lempke's vehicle, and he watches to see if his car will slow down. But he sees Mr. Lempke's car coming, and suddenly he wants to cross at that time, and is not going to be intimidated. Those are my concerns about the issue that came up with his testimony that have me find him not credible. But in any event, I have those concerns. And that's the basis for my sentence.

*Id.* at 113-14. In addition, the trial court ordered Sulpizio to pay restitution to Lempke in the amount of $1,226.95, as well as court costs and fees. On further questioning from Sulpizio on whether he was permitted in the right-of-way, the trial court responded that, "[h]e's not to be on anything designated as the property. He needs to make himself aware of what that property line is." *Id.* at 115. It further stated, "[a]long the side, I will not forbid him from being there. I don't want him standing in that entranceway, the driveway, and I don't want him anywhere within that property." *Id.* at 117.

Sulpizio timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.[4]

## II.

Sulpizio raises three claims on appeal: a challenge to the sufficiency of the evidence to prove intent to damage Lempke's vehicle; a challenge to the grading of the offense and the restitution order; and a challenge to the condition of probation prohibiting him from entering the right-of-way.

## A.

First, Sulpizio argues that the evidence was insufficient to prove beyond a reasonable doubt that he intended to damage Lempke's vehicle when he struck it with his hand.[5] He argues that he merely pushed back against the

_____

[4] Sulpizio filed an untimely post-sentence motion on August 24, 2021, twelve days after his sentencing, which did not toll the time period for filing a notice of appeal. *See* Pa.R.Crim.P. 720 (A)(1), (3). Subsequently, he filed a timely notice of appeal and the trial court ordered him to file a concise statement pursuant to Pa. R.A.P. 1925(b). On November 2, 2021, the trial court entered an order denying the post-sentence motion to clarify the record but acknowledged that the motion was untimely and that it no longer had jurisdiction over the matter. *See* Order of Court, 11/2/21, at 1 n.1 (citing Pa. R.A.P. 1701(b)(1)). The trial court then entered an additional opinion addressing the issues raised in Sulpizio's concise statement.

[5] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

*(Footnote Continued Next Page)*

vehicle to avoid being hit and did not intend to cause any damage. This claim is meritless.

"A person is guilty of criminal mischief if he . . . intentionally damages real or personal property of another." 18 Pa.C.S. § 3304(a)(5). The offense is graded as a second-degree misdemeanor if the defendant causes a loss between $1,000 and $5,000. 18 Pa.C.S. § 3304(b). A person acts intentionally to cause damage if "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S. § 302(b)(1)(i).

Sulpizio's argument construes the evidence at trial in the light most favorable to him, in contravention of our well-settled standard of review. *Lopez*, *supra*. He cites his own trial testimony in support of his contention that he only struck the vehicle to "create some space" and to avoid being hit.

---

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

N.T., 8/12/21, at 72. He cites to his character witnesses to support his argument that he is peaceful and law-abiding and claims that the trial court erred by concluding, without support in the record, that there had been prior "confrontations" between Sulpizio and Lempke while he was working outside of AWC. *See* Sulpizio's Brief at 13.

These arguments are unavailing. Initially, we note that the trial court did not find Sulpizio credible as a witness and we may not disturb this determination on appellate review. N.T., 8/12/21, at 113-14; *Lopez*, *supra*. Examining the Commonwealth's evidence, there was ample direct and circumstantial evidence to support the trial court's verdict. The surveillance video was played for the trial court multiple times throughout the trial and depicts Sulpizio watching Lempke's car turn into the driveway and striking it with his hand. At the conclusion of the proceedings, the trial court stated it had reached its verdict based on the video and its assessment of Sulpizio's credibility. The trial court's conclusion was further supported by the body camera footage depicting the damage to the vehicle and Lempke's testimony that there were no dents on his vehicle before he heard the loud bang when driving by Sulpizio. The trial court as fact-finder was entitled to credit this evidence over Sulpizio's testimony when reaching its verdict.

Moreover, the record, including Sulpizio's own testimony, supports the trial court's factual finding that Sulpizio had prior interactions with Lempke

- 10 -

and other employees at AWC.[6] Lempke testified that he recognized Sulpizio on the day in question because he had interacted with him and his vehicle in the past. In addition, he stated on the body camera footage that Sulpizio had struck his vehicle in the past, albeit without causing damage. Sulpizio was also depicted on body camera footage telling the officers about prior incidents with AWC employees, a fact he confirmed in his own testimony when he stated that he had previously "called out to the staff" and there was "a slight protest aspect of it." N.T., 8/12/21, at 75. This circumstantial evidence further supports the conclusion that Sulpizio struck Lempke's vehicle with the intent to cause damage. Viewing this evidence in the light most favorable to the Commonwealth, it proved beyond a reasonable doubt that Sulpizio intended to cause the damage to Lempke's vehicle. His first claim is meritless.

**B.**

Next, Sulpizio conflates two arguments in his brief: a challenge to the grading of the offense as a second-degree misdemeanor and a challenge to the restitution order as unsupported by the record. The latter claim is waived, as it pertains to the discretionary aspects of his sentence and was not properly

---

[6] Sulpizio assails the trial court for referring to the past incidents as "confrontations" rather than "interactions." Sulpizio's Brief at 13-14. Given the evidence presented at trial of the past interactions with AWC employees, the passing reference to "confrontations" in the trial court's Pa. R.A.P. 1925(a) opinion was reasonable and supported by the record.

preserved in a timely post-sentence motion.[7]   However, when criminal

mischief is charged as a misdemeanor, the value of the damage caused is an

essential element of the crime.  ***Commonwealth v. Kearney***, 225 A.3d 590,

595 (Pa. Super. 2019).  Thus, we consider this claim as a challenge to the

sufficiency of the evidence to support Sulpizio's conviction.

Sulpizio thoroughly cross-examined Camargo regarding the invoice for

repair to the vehicle, questioning whether all the listed services in his estimate

were truly necessary.  Camargo maintained throughout that the services

rendered were necessary to prevent the paint from peeling and to ensure that

the color of the repainted area matched the rest of the vehicle.  While he

admitted that smaller dents can be repaired with a less-intensive process, he

testified that the damage in this case required a more thorough repair.

Because his shop offered a lifetime warranty on all work performed, Camargo

testified that they would not provide a less-intensive repair because they

would then have to redo the work in the future when the paint began to peel.

After considering this testimony and Sulpizio's cross-examination on the

necessity of the repairs, the trial court was entitled to credit Camargo's

---

[7] ***See Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa. Super. 2018) (discussing issue preservation requirements to present a claim challenging discretionary aspects of sentencing); ***Commonwealth v. Weir***, 239 A.3d 25, 38 (Pa. 2020) (holding that a challenge to the amount of restitution and the evidence to support it concerns the trial court's exercise of discretion, not the legality of the sentence).

estimate to determine that Sulpizio had caused $1,226.95 worth of damage to Lempke's vehicle, rendering the charge a second-degree misdemeanor. 18 Pa.C.S. § 3304(b). The record was sufficient to support the grading of the offense.[8]

## C.

Finally, Sulpizio argues that the trial court abused its discretion by prohibiting him from entering the AWC driveway as a condition of his probation.[9] "The right to appellate review of the discretionary aspects of a

---

[8] In arguing that Camargo's estimated repairs included pre-existing damage not caused by his conduct, Sulpizio overstates the record. Lempke testified that his car had a scratch on it but did not state whether that scratch was on the same panel that Sulpizio damaged. *See* N.T., 8/12/21, at 32 ("I believe there was one scratch from probably when I was in a grocery store. No dents."). Camargo testified that his estimate concerned only damage to the right rear door and he could not recall whether there was additional pre-existing damage to that door. He said that a "small enough scratch" would have been sanded down and repainted in the repair process, but any "actual damage" would have been listed on the estimate. *Id.* at 44. This scant evidence does not support Sulpizio's contention that the estimated repairs covered more than the damage he inflicted.

[9] Our standard of review is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*(Footnote Continued Next Page)*

sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement of reasons for allowance of appeal pursuant to Pa. R.A.P. 2119(f) in his brief, and raise a substantial question for review. ***Id.*** Here, Sulpizio preserved his argument regarding the probation condition at the sentencing hearing, filed a timely notice of appeal and included a statement pursuant to Pa. R.A.P. 2119(f) in his brief. Thus, we consider whether he has raised a substantial question.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Clarke***, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). Here, Sulpizio argues that the condition restricting him from using the right-of-way infringes upon his rights under the First Amendment to the federal constitution.[10] We have previously held that the

---

***Commonwealth v. Wallace***, 244 A.3d 1261, 1278–79 (Pa. Super. 2021) (citation omitted).

[10] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or
*(Footnote Continued Next Page)*

argument that a probation condition "unduly restricts" freedom of speech raises a substantial question. *Commonwealth v. Fenton*, 750 A.2d 863, 867 & n.4 (Pa. Super. 2000) (upholding probationary condition that prohibited defendant from contacting congressman's office and local newspaper); *see also Commonwealth v. Starr*, 234 A.3d 755, 765-66 (Pa. Super. 2020). Accordingly, we proceed to the merits of this claim.

When imposing a sentence of probation, the trial court may attach "reasonable conditions . . . as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). The Sentencing Code includes a non-exhaustive list of possible conditions along with a catch-all proviso that the trial court may impose other conditions "reasonably related to rehabilitation." 42 Pa.C.S. § 9763(b)(15).

> A probation order is unique and individualized. It is constructed as an alternative to imprisonment and is designed to rehabilitate a criminal defendant while still preserv[ing] the rights of law-abiding citizens to be secure in their persons and property. When conditions are placed on probation orders they are formulated to insure or assist a defendant in leading a law-abiding life. Moreover, as long as conditions placed on probation are reasonable, it is within a trial court's discretion to order them. Thus, [w]hile sentencing courts have discretion to impose conditions of probation, such conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of law-abiding conduct.

_____

of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

- 15 -

*Commonwealth v. Carr*, 262 A.3d 561, 568 (Pa. Super. 2021) (citations & internal quotations omitted). Finally, it is well-established that "a person placed on probation does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who [have] not run afoul of the law." *Commonwealth v. Koren*, 646 A.2d 1205, 1209 (Pa. Super. 1994) (citations & internal quotations omitted).

Here, Sulpizio argues that the probationary condition prohibiting him from entering the driveway infringes on an essential part of his pro-life advocacy, violating his First Amendment rights. As no Pennsylvania case has addressed this precise issue, he cites to cases from Texas and Alabama that address free speech and abortion protestors.[11] He points out that protesting outside of abortion clinics is a protected activity in Pennsylvania, and that the United States Supreme Court has struck down a law restricting internet access for convicted sex offenders as unconstitutional on First Amendment grounds. Sulpizio's Brief at 18-19 (citing *Klebanoff v. McMonagle*, 552 A.2d 677 (Pa. Super. 1988); *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017)). He contends that his conviction pertained to physical contact with an AWC

---

[11] *See* Sulpizio's Brief at 16-18 (citing *Ex parte Tucci*, 859 S.W.2d 1 (Tex. 1993); *Markley v. State*, 507 So.2d 1043 (Ala. Crim. App. 1987)). Only *Markley* involves a probation condition prohibiting the defendant from protesting outside of abortion clinics after he was convicted of burglary for entering a clinic and destroying its equipment. Sulpizio concedes that the *Markley* court held that the condition was permissible but contends that its reasoning was faulty.

employee's car and any restriction on his pro-life advocacy is unrelated to his crime. Finally, he argues that the trial court erred by relying on evidence of other incidents at AWC when imposing the condition.

In analyzing this claim, we find **Commonwealth v. Schafkopf**, 270 A.3d 1147 (Pa. Super. Dec. 17, 2021) (unpublished memorandum), persuasive.[12] There, the trial court imposed a condition of probation prohibiting the defendant from posting information or comments about the victim on the internet and required him to delete existing posts. **Id.** at *9. The defendant argued that this condition was an unconstitutional restriction on his freedom of speech. In analyzing this claim, we explained:

> [A] person's free speech rights are not absolute.
> **Commonwealth v. Knox**, 190 A.3d 1146, 1153-1154 (Pa.
> 2018). Rather, restrictions on speech are upheld "so long as they
> are designed to serve a substantial governmental interest and do
> not unreasonably limit alternative avenues of communication."
> **Friends of Danny DeVito v. Wolf**, 227 A.3d 872, 902 (Pa.
> 2020). In the context of a challenge to conditions of probation
> under § 9763(b)(15), restrictions on free speech will be deemed
> to validly serve the rehabilitative needs of the defendant if the
> facts of the case establish a reasonable nexus between the
> restriction imposed and the charged offense. **Carr**, [262 A.3d at
> 567-69]; **Commonwealth v. Houtz**, 982 A.2d 537, 541 (Pa.
> Super. 2009); **see also Starr**, 234 A.3d at 763-764 (no abuse of
> discretion where trial court imposed internet restriction as special
> condition of probation within an individualized assessment of what
> best served the aims of rehabilitation and deterrence). While our
> own research has failed to uncover a test which governs the
> permissive scope of restrictions on expression within the context
> of a probationary order, we are guided by the analytical

_____

[12] We may cite to unpublished memorandum decisions of this Court filed after May 1, 2019, for their persuasive value. Pa. R.A.P. 126(b).

framework of **United States v. O'Brien**, where a restriction is deemed valid if:

    (1) it is within the constitutional power of the government;

    (2) it furthers an important or substantial government interest;

    (3) that governmental interest is unrelated to the suppression of free expression; and

    (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

**United States v. O'Brien**, 391 U.S. 367, 377 (1968); **see S.B. v. S.S.**, 243 A.3d 90 (Pa. 2020), *cert. denied* - - S.Ct. - - , 2021 WL 4509036 (Oct. 4, 2021); **Commonwealth v. Lambert**, 147 A.3d 1221, 1229 (Pa. Super. 2019).

**Id.** at *10.

Applying the **O'Brien** test, we concluded that imposing conditions of probation is undoubtedly within the power of the trial court and serves governmental interests unrelated to suppressing speech, such as ensuring that the defendant leads a law-abiding life, deterring further crime, rehabilitation of the defendant and protection of the public. **Id.** at *10-11. We then held that the restriction at issue was narrowly tailored because it did not restrict all the defendant's online activity, allowed him to speak freely on important topics as long as he did not specifically reference the victim, and permitted him to speak about the victim outside of online platforms. **Id.** at *11.

The same logic applies here. Applying the first factor of the **O'Brien** test, the trial court has the authority to impose probationary conditions that restrict free speech rights. **See** 42 Pa.C.S. §§ 9754(b), 9763(b)(15); **Fenton**, **supra**. In addition, the condition serves important governmental interests unrelated to suppressing his speech. The trial court also noted that it imposed the condition to assist Sulpizio in avoiding further criminal activity. **See** Order of Court, 11/2/21, at unnumbered 2; Trial Court Opinion, 11/23/21, at 2-3. The condition also serves to protect the community, including employees and patients at AWC, from Sulpizio's conduct. These important interests are unrelated to the content of any message Sulpizio may intend to deliver in the right-of-way. Finally, the condition prohibiting Sulpizio from entering AWC's private property, in this case, the driveway, does not restrict his free speech because he has not established that he has a right to speak on AWC's premises.[13] **See Manhattan Comm. Access Corp. v. Halleck**, 139 S.Ct.

_____

[13] At the sentencing hearing, Sulpizio's counsel stated without elaboration that it was "[his] understanding [] that there is a longstanding agreement in which he is allowed to be, not on the premises, but in the right-of-way area going into the premises." Notes of Testimony, 8/12/21, at 112. However, he did not submit the federal court order detailing the purported agreement until he attached it as an exhibit to his untimely post-sentence motion. **See** Post-Sentence Motion, 8/24/21, Exhibit A. Because the trial court was unable to reconsider its sentence on the grounds advanced in the untimely motion, this argument is waived. **See** Pa.R.A.P. 302(a); **supra** note 4.

Nevertheless, we note that the order does not establish Sulpizio's right to enter the driveway. First, the order was issued while AWC was at a former location and does not reference its current premises. Second, the order
*(Footnote Continued Next Page)*

1921, 1930 (2019) ("[W]hen a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor. The private entity may thus exercise editorial discretion over the speech and speakers in the forum."). Sulpizio has not advanced any argument that the AWC driveway, as opposed to the public sidewalks adjacent to the building, is a traditional public forum.

Finally, to the extent the condition imposes an "incidental restriction on alleged First Amendment freedoms," the restriction is "no greater than is essential to the furtherance of that [government] interest." *O'Brien*, *supra*. Sulpizio is not to enter the AWC driveway. The trial court was clear at the sentencing hearing and its subsequent opinions that Sulpizio is free to engage in his activities on adjacent sidewalks to AWC or along the side of the building; he just cannot engage in those activities on AWC's premises including its driveway. He is not foreclosed from exercising his free speech rights outside of AWC or in any other forum. He must merely refrain from entering the area

_____

specifically provides that protestors "are permitted to engage in their protest activities on Keats Street so long as they conduct their protest activities *along the public walkways* of Keats Street, *in a lawful manner that does not obstruct traffic on Keats Street, or the entrances to the AWC and the AWC parking lot*." Post-Sentence Motion, 8/24/21, Exhibit A, at ¶ 3(b) (emphasis added). This language does not support the contention that Sulpizio has an unfettered First Amendment right to engage in his activities in AWC's private driveway. Finally, while the form of the action is unclear from the single order, it appears to restrict the City of Allentown from enforcing local ordinances against protestors and does not reference AWC's right to exclude individuals from its premises. AWC is not listed as a named defendant in the action.

where he committed his crime. This condition is narrowly tailored to serve the interests of deterrence and rehabilitation and individualized to his offense, without preventing him from continuing his counseling and advocacy.

In his brief, Sulpizio baldly asserts: "As testified to and as per the physical layout of the building, precluding Mr. Sulpizio from being on the driveway does foreclose an essential part of his activities." Sulpizio's Brief at 19. He does not cite to any point in the record, and we have not found in our independent review, where he explains why the driveway is essential to his work at AWC[14] or that he has a legal right to access the driveway.

Additionally, as explained in Part II.A, *supra*, the trial court reasonably concluded from the testimony and video presented at trial that Sulpizio had a history of negative interactions with AWC employees and was entitled to consider that history when crafting its sentence. **Carr**, **supra**. Finally, while **Klebanoff** recognized a constitutional right to protest outside of clinics that provide abortion services, the critical distinction is Sulpizio's status as a probationer who "does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who [have] not run afoul of the law." **Koren**, **supra**.

---

[14] At trial, Sulpizio stated that he entered the right-of-way during the incident in question because he "didn't want to be intimidated by Lempke." Notes of Testimony, 8/12/21, at 87.

Accordingly, we conclude that the restriction is reasonable, has a sufficient nexus to Sulpizio's criminal conduct and serves important rehabilitative goals. ***Carr***, ***supra***. Based on the foregoing, the trial court did not abuse its discretion in prohibiting Sulpizio from entering AWC premises, including its driveway, as a condition of his probation.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2022