J-S46025-23

2024 PA Super 19

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :           PENNSYLVANIA
                             :
            v.               :
                             :
                             :
SAMANTHA MARIE GLAWINSKI      :
                             :
         Appellant           :  No. 1422 WDA 2022

Appeal from the Judgment of Sentence Entered November 10, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0002282-2021

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

OPINION BY MURRAY, J.:                        **FILED: February 7, 2024**

Samantha Marie Glawinski (Appellant) appeals from the judgment of sentence imposed after her non-jury conviction of one count of receiving stolen property.[1]  We affirm.

On November 16, 2021, state parole agents entered the residence Appellant shared with her boyfriend, Elijah Hildebrand (Hildebrand), to conduct a parole check on Hildebrand.  N.T., 8/30/22, at 6-7.  During the check, the agents discovered a firearm.  After checking its serial number, the agents learned the firearm was reported stolen.  *Id.* at 18-20.  Previously, Appellant had signed a "home provider agreement" in conjunction with Hildebrand's parole, which acknowledged that parolees were prohibited from having firearms at their residence.  *Id.* at 13-14.

---

[1] 18 Pa.C.S.A. § 3925(a).

California Borough Police Officer Margaret Nunley arrived at the residence, *Mirandized*[2] Hildebrand, and questioned him about the firearm. *Id.* at 31-37. During this questioning, Appellant stated, without prompting, that the firearm belonged to her. *Id.* at 37. Appellant told Officer Nunley that the firearm had been given to her earlier that day by a friend who had thoughts of committing suicide. *Id.* at 39. Appellant denied she was covering for Hildebrand, but refused to provide any information about who purportedly gave her the firearm. *Id.* at 40.

Following a non-jury trial, the trial court found Appellant guilty of receiving stolen property. The trial court scheduled sentencing and ordered a presentence investigation report (PSI).

At the sentencing hearing, the trial court noted Appellant's prior record score was 0; her offense gravity score was 8; and the Sentencing Guidelines provided for a standard-range sentence of 9 to 16 months in prison. N.T., 11/10/22, at 20. The trial court indicated it would sentence Appellant to two years of probation, with the first six months on electronic home monitoring. *Id.* The Commonwealth requested a probation condition that Appellant have no contact with Hildebrand. *Id.* at 22-23. Appellant objected, saying Hildebrand was going to "be my husband." *Id.* at 23. Defense counsel argued there was no authority for such a condition, saying, "Love is blind." *Id.* The

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

trial court noted the PSI included numerous statements from Appellant's family and friends "agree[ing] that [Hildebrand] is not someone [Appellant] should be around." *Id.* at 24. The trial court stated, "You can challenge this however you want to challenge it, but I'm going to make it a condition of your probation that you are not to have any contact with Mr. Hildebrand." *Id.* at 25. Appellant indicated Hildebrand was on her lease and planned to move in with her upon his upcoming release from prison. *Id.* at 25, 30. She said to the trial court, "please don't take him away from me…. I'm marrying him." *Id.* at 29.

The trial court sentenced Appellant to two years of probation. The order also prohibited Appellant from having contact with Hildebrand. Appellant filed a timely post-sentence motion, requesting reconsideration of the no-contact condition. The trial court denied the motion, and Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents one question for our review: "Did the [trial court] abuse [its] discretion in ordering—as a special condition of [Appellant]'s probation—[that Appellant] shall have no contact[,] directly or indirectly, or by any means, with Elijah Hildebrand[?]" Appellant's Brief at 17 (some capitalization modified).

There is no automatic right of appeal from the discretionary aspects of a sentence. *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super.

2010). An appellant challenging the discretionary aspects of a sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Appellant filed a timely notice of appeal and preserved the claim in her post-sentence motion. Her brief includes the required Pa.R.A.P. 2119(f) statement. Appellant's Brief at 34.

We next consider whether Appellant presents a substantial question.

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). Appellant's Rule 2119(f) statement asserts that her sentence was "unduly harsh, manifestly excessive[,] and unreasonable in light of the criminal conduct, or lack thereof, at issue." Appellant's Brief at 34. "A claim that a sentence is manifestly excessive such that it constitutes too severe a

punishment raises a substantial question." ***Commonwealth v. Kelly***, 33 A.3d 638, 640 (Pa. Super. 2011) (citing ***Commonwealth v. Mouzon***, 812 A.2d 617, 624 (Pa. 2002)). Appellant further argues the trial court failed to engage in individualized sentencing and "did not distinguish how Appellant's crime was worse" than those of similarly-situated defendants. Appellant's Brief at 34. A claim that the trial court failed to engage in individualized sentencing may "raise a substantial question because it essentially challenges the adequacy of the reasons given by the court for its sentencing choice." ***Commonwealth v. Marts***, 889 A.2d 608, 613 (Pa. Super. 2005). Accordingly, we will review the merits of Appellant's claim.[3]

"The standard employed when reviewing the discretionary aspects of sentencing is very narrow." ***Commonwealth v. King***, 182 A.3d 449, 454 (Pa. Super. 2018) (citation omitted).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived [at] a manifestly unreasonable decision.

---

[3] In ***Commonwealth v. Koren***, 646 A.2d 1205, 1208 (Pa. Super. 1994), we determined the appellant presented a substantial question, when she argued that a probation condition prohibiting contact with her boyfriend unduly restricted her liberty. Though not specifically articulated in her Rule 2119(f) statement, Appellant makes the same argument here. ***See*** Appellant's Brief at 52. The Commonwealth does not dispute that a substantial question exists. Commonwealth's Brief at 11.

*Commonwealth v. Torres*, 303 A.3d 1058, 1065 (Pa. Super. 2023) (citation omitted).

A trial court may "attach reasonable conditions" to a sentence of probation "as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S.A. § 9754(b). The Sentencing Code sets forth a non-exhaustive list of possible conditions and includes a catch-all provision that the trial court may require the defendant "[t]o do other things reasonably related to rehabilitation." 42 Pa.C.S.A. § 9763(b)(15).

> A probation order is unique and individualized. It is constructed as an alternative to imprisonment and is designed to rehabilitate a criminal defendant while still preserv[ing] the rights of law-abiding citizens to be secure in their persons and property. When conditions are placed on probation orders[,] they are formulated to insure or assist a defendant in leading a law-abiding life. Moreover, as long as conditions placed on probation are reasonable, it is within a trial court's discretion to order them.

*Commonwealth v. Carr*, 262 A.3d 561, 568 (Pa. Super. 2021) (citation omitted). "[I]t is well-established that a person placed on probation does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who have not run afoul of the law." *Commonwealth v. Sulpizio*, 281 A.3d 352, 361 (Pa. Super. 2022) (citation omitted).

In *Koren*, the appellant pled *nolo contendere* to hindering apprehension or prosecution. *Koren*, 646 A.2d at 1207. The Commonwealth had alleged that the appellant had conspired to rent a hotel room for her boyfriend, Martin, whom she knew was a fugitive. *Id.* The trial court sentenced her to two years of probation with the condition that she have no contact with Martin. *Id.*

Although the appellant argued the no-contact condition unduly restricted her liberty, we held the condition "was reasonably related to [the appellant's] rehabilitation." *Id.* at 1210. We noted that the appellant

> was living a law-abiding life until she met Martin, and the record reflects that [her] potential for getting back to living that law-abiding life is much greater if she has no contact with Martin. [The appellant's] only crimes stemmed from her association with Martin. We feel it was reasonable for [the trial court] to order that [the appellant] have no contact with Martin during her two years of probation, and we agree that the no-contact condition would assist [her] in living a law-abiding life.

*Id.* at 1209-10.

Here, Appellant attempts to distinguish *Koren* by arguing that Appellant had "no active role or participation in hiding [Hildebrand] from law enforcement officials." Appellant's Brief at 56. She contends she "was not involved in any criminal activity or enterprise" with Hildebrand, who was not a co-defendant in the underlying case. *Id.* Appellant further maintains that "there is nothing to suggest that [Hildebrand] was influencing [her] to lead a life of crime and disregard for the law…." *Id.* She acknowledges her family and friends "seemingly have little regard for" Hildebrand, but argues that "if no-contact provisions were based solely on dislike of one's significant other, spurious no-contact requests would run rampant." *Id.* Appellant concludes "the record is devoid of specificity" as to the trial court's reasons for imposing the no-contact provision. *Id.* at 57. We disagree.

In imposing the no-contact condition, the trial court

- 7 -

considered that [Appellant]'s charges stemmed from an encounter in which State Parole agents had come to [Appellant]'s residence to do a home check on Elijah Hildebrand. [The trial court] also considered numerous letters from [Appellant]'s family and friends which indicated that [Appellant] was not a bad person but that her issues with the law had stemmed from her relationship with Elijah Hildebrand.

Trial Court Opinion, 1/25/23, at 2-3.

The PSI included statements from Appellant's family and friends, which emphasized that Appellant had been a law-abiding citizen until Hildebrand entered her life.[4] During sentencing, the trial court quoted one of Appellant's character references, who stated Appellant "is not a criminal. Unfortunately, she is dating a criminal and she chose to take the fall for the person she loves instead of letting the blame fall on the person who deserves it." N.T., 11/10/22, at 24.

The PSI also disclosed Appellant had pending theft charges, stemming from incidents that implicated Hildebrand as a co-defendant. PSI at 2, 6. Officer Nunley stated those charges arose from Appellant "stealing things to get money to" supply Hildebrand's crack cocaine habit. *Id.* at 2.

Based on this information, the trial court "determined that [Appellant] would be best assisted in her rehabilitation by having no contact with Mr.

---

[4] Where the trial court has the benefit of a PSI, "we can assume [it] was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citation and quotation marks omitted). Here, the trial court stated on the record that it read and considered the PSI. N.T., 11/10/22, at 15-16.

Hildebrand." Trial Court Opinion, 1/25/23, at 3. Relying on **Koren**, the trial court found that Appellant's crime "stemmed from her association with" Hildebrand and that her "potential for living a law-abiding life is much greater if she has no contact with" him. **Id.**

These findings are supported by the record. "While the no-contact condition is restrictive, it is not unduly so." **Koren** at 1210. The condition is reasonably related to Appellant's rehabilitation, and therefore the trial court did not abuse its discretion in imposing it. Accordingly, Appellant's issue warrants no relief.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


2/7/2024