J-S05006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES DAVIS | : | |
| | : | |
| Appellant | : | No. 1547 EDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered July 12, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000941-2021

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:              **FILED APRIL 8, 2026**

Charles Davis appeals *nunc pro tunc* from the judgment of sentence imposed on July 12, 2024, for his convictions of third-degree murder, conspiracy, attempted murder, and firearms not to be carried without a license.[1] Davis challenges the discretionary aspects of the sentence imposed. After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

**Facts**

On February 19, 2020, at approximately 3:30 p.m., [Davis], then twenty-five years old, and his co-defendant, Joel Saint-Fort, then sixteen years old, shot at a group of six individuals standing outside of 1039 West Thompson Street in Philadelphia. One

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 903, 901, and 6106(a)(1), respectively.

member of the group returned fire as the two gunmen fled north on 11th Street. Yaniyah Foster, a nineteen-year-old who lived on the block, was sitting on her stoop when she was hit in the crossfire. Ms. Foster suffered a fatal gunshot wound to the right side of her head and was taken to Temple University Hospital, where she was pronounced dead. Another victim, Jahmere Williams was struck in the head while seated inside of his vehicle.

Shortly after the incident, police officers saw the co-defendants drive in to Temple University Hospital parking lot in a gray Dodge Charger seeking treatment for a gunshot wound to [Davis'] arm. Upon inspection of the vehicle in the hospital parking garage, officers recovered a .40 caliber Smith & Wesson from beneath the driver's seat and a 9-millimeter Taurus on the floorboard of the passenger's side.

The Crime Scene Unit recovered fifteen 9-millimeter [fired cartridge casings ("FCCs")] and seven .40 caliber [FCCs] at 1039 West Thompson Street. The Forensic Investigation Unit examined the FCCs recovered at the crime scene and the guns found within the Dodge Charger and determined that FCCs 8, 11, 13, 17, 18, 19, [and] 22 were fired from the .40 caliber Smith & Wesson and FCC 21 was fired from the 9-millimeter Taurus. DNA testing was performed on the recovered guns, with [Davis'] DNA found primarily on the 9-millimeter Taurus.

**Procedural History**

On February 21, 2020, [Davis] was arrested and charged with murder and related offenses. On May 9, 2024, [Davis] pled guilty to third degree murder, conspiracy to commit third degree murder, attempted murder, and firearms not to be carried without a license ("VUFA 6106"). Sentencing was deferred for pre-sentence investigation [("PSI")] and mental health reports.

On July 12, 2024, [the trial court] sentenced [Davis] to twenty to forty years of imprisonment for murder of the third degree, as well as concurrent sentences of ten to twenty years of imprisonment each for attempted murder and conspiracy to commit third degree murder and a concurrent sentence of one to two years of imprisonment for VUFA 6106, for an aggregate sentence of twenty to forty years of imprisonment.

On July 15, 2024, [Davis] filed a motion for reconsideration of sentence, which [the trial court] heard and denied on August 14, 2024. The next day, on August 15, 2024, [Davis] filed a timely notice of appeal and on August 26, 2024, [Davis] filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Trial Court Opinion, 9/3/24, at 1-2 (paragraphs reordered for ease of discussion; unnecessary capitalization, record citations, and footnote omitted).

The trial court authored its opinion on August 30, 2024, and an amended opinion on September 3, 2024. *See* Pa.R.A.P. 1925(a). This Court affirmed Davis' judgment of sentence on April 7, 2025, finding the only issue waived because counsel failed to include a Rule 2119(f) statement in his brief and the Commonwealth objected to its omission. *See Commonwealth v. Davis*, 339 A.3d 376 (Pa. Super. 2025) (unpublished memorandum).

On May 8, 2025, Davis filed a timely Post-Conviction Relief Act ("PCRA") petition, asserting counsel was ineffective on appeal for waiving his only issue. Davis requested the PCRA court reinstate his appellate rights *nunc pro tunc*. The PCRA court granted this request and gave Davis 30 days from May 22, 2025, to file a new notice of appeal. Davis filed a timely notice of appeal on June 13, 2025. The court did not order Davis to file a new Rule 1925(b) statement nor did the court author a new 1925(a) opinion.

Davis raises one issue for our review:

Whether the court's aggregate sentence of twenty (20) to forty (40) years' incarceration was an abuse of discretion which did not

- 3 -

appropriately contemplate the legislative goals of sentencing under both Pennsylvania and Federal law?

Appellant's Brief, at 3 (unnecessary capitalization omitted).[2]

Davis is not entitled to an appeal as of right because he is challenging the discretionary aspects of his sentence. *See Commonwealth v. Hill*, 348 A.3d 264, 287 (Pa. Super. 2025).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Id.* (internal brackets and citation omitted).

Davis filed a timely notice of appeal, preserved his claims in a motion to reconsider sentence, and included a Rule 2119(f) statement in his brief. We therefore turn to whether Davis raised a substantial question that his sentence is not appropriate under the Sentencing Code.

> In determining whether a substantial question exists, a Court does not examine the merits of whether the sentence is actually

---

[2] We note that although Davis pled guilty, he is permitted to challenge the discretionary aspects of his sentence because the trial court was given discretion in what sentence to impose, so long as it was below the cap the Commonwealth and Davis agreed to in fashioning the guilty plea agreement. *See Commonwealth v. Harris*, --- A.3d ---, *3 (Pa. Super. filed Feb. 9, 2026) (hybrid plea agreements with a cap on the sentence allows the defendant to appeal the discretionary aspects of the sentence imposed).

excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Commonwealth v. Glawinski*, 310 A.3d 321, 325 (Pa. Super. 2024) (citation omitted).

Davis argues his sentence is the result of "a non-individualized, disproportionate, and merely punitive sentence that is inconsistent with the legislative goal of sentencing to avoid unwarranted sentence disparities among similarly situated defendants, specifically [Davis'] co-defendant." Appellant's Brief, at 9-10. Furthermore, Davis asserts the court failed to consider his characteristics, personal history, and potential for rehabilitation and instead focused too heavily upon the nature of the offense and his disciplinary infractions while incarcerated. *See id.* at 10.

"A claim that the trial court failed to engage in individualized sentencing may raise a substantial question because it essentially challenges the adequacy of the reasons given by the court for its sentencing choice." *Glawinski*, 310 A.3d at 325 (internal quotation marks and citation omitted); *see also Commonwealth v. Ali*, 197 A.3d 742, 764 (Pa. Super. 2018) (finding a substantial question raised when appellant argued his sentence was harsher than his co-defendant's without sufficient reasons stated by the trial court). Further, this Court has held that a claim that the court based its sentence solely on the seriousness of the offense and failed to consider all

relevant factors raises a substantial question for our review. ***See***

***Commonwealth v. Derrickson***, 242 A.3d 667, 680 (Pa. Super. 2020). We

therefore turn to the merits of Davis' claim.

We begin with our well-established standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

***Glawinski***, 310 A.3d at 326 (brackets and citation omitted).

We note that "a defendant is not entitled to the same sentence as that

imposed on another person involved in the same crime. Rather, when there is

a disparity between co-defendants' sentences, a sentencing court must give

reasons particular to each defendant explaining why they received their

individual sentences." ***Ali***, 197 A.3d at 764 (citation and internal quotation

marks omitted). Finally, "[w]here the trial court has the benefit of a PSI report,

we shall presume that the sentencing judge was aware of relevant information

regarding the defendant's character and weighed those considerations along

with mitigating statutory factors." ***Hill***, 348 A.3d at 287 (internal quotation

marks, ellipsis, and citation omitted).

Davis argues the sentencing court here placed "undue weight upon the

nature of the offense and failed to consider the rehabilitative needs of

[Davis.]" Appellant's Brief, at 14. He further asserts the court erred in not

sentencing him to the same sentence as his co-defendant, specifically 15 to 30 years' incarceration. **See id.** He claims because they both pled guilty to the same charge and neither had a prior criminal record, he should have received the same sentence. **See id.** He believes the court made assumptions, without support, that he "acted as a leader, instigator, or played a more significant role than his co-defendant." **Id.** at 16. Finally, Davis contends the court should not have considered his disciplinary infractions while incarcerated awaiting trial because he was either not involved or they were minor in nature. **See id.** at 22-24.

We find Davis is not entitled to relief. The sentencing court clearly considered all of the information before it and gave due consideration to numerous factors. The court not only had the benefit of a PSI, but he detailed what was included in the PSI prior to imposing the sentence. **See** N.T. Sentencing, 7/12/24, at 9-15. The court permitted counsel to challenge the disciplinary infractions listed in the PSI and found he would not consider one of them, as there was insufficient evidence of Davis' involvement. **See id.** at 14. The court further considered a mental health evaluation and defense's pre-sentence memorandum. **See id.** at 15-18. The court then heard from counsel for both Davis and the Commonwealth, victim impact statements from family of the victim, and Davis himself. **See id.** at 19-36.

The court then detailed its reason for the sentence it imposed:

Mr. Davis, here [are] the issues that I have with your case.

- 7 -

You took a 16-year old to a gun fight. You took a 16-year old to go shoot and kill someone, or at least shoot them. You didn't care that it was right next to a grade school. You didn't care that there were people out on the street at the same time.

You have made so many bad decisions when you were given so many gifts.

I also look at the difference between your co-defendant's case and your case, and what I see is a history of in the prison infractions… okay, I agree with the one, but on one hand you want to blame what happened on drugs but you continue to use drugs in prison. You didn't take advantage and there aren't many opportunities, but there were opportunities in the county system for you to better yourself. And all right, Covid was rough. Covid was rough on everyone.

So I look at your first infractions and I say: Okay. Maybe there is an excuse for those. But what was your last infraction? Your last infraction was five days after your plea. Five days. May 13th. Critical infraction, for possession or introduction of drugs, possession of an electronic device, failure to follow safety and sanitation regulations. That to me is not the sign of someone who has appreciated the seriousness of his offense. That is the sign of someone who in spite of being in jail for four years hasn't learned how to follow the rules. This is not a question of your mental capacity.

*Id.* at 36-38.

After Davis filed a post-sentence motion, the court held a hearing. At that hearing, the court reiterated:

I reviewed the notes of testimony from the sentencing and I reviewed everything that I reviewed prior to imposing my sentence and saw that I did, in fact, sir, impose a sentence less than what the Commonwealth asked for but I—the difficulty I had—and for the record it's not—it's not your prison infractions alone that gave you—that made a difference between your sentence and the codefendant.

First of all, I know nothing and I knew nothing about the codefendant. That case was not in front of me. I judge each case

- 8 -

on the information I have in front of me. But what—and I told you—I think— that at the time.

But what disturbed me greatly is you took a 16-year-old to a gunfight and that, not only did you take him to a gunfight, but you took him to a gunfight right outside of a school, and you completely disregarded other people on the street, which is why we were here. A 19-year-old—

I believe she was sitting on her stoop, right?

[THE COMMONWEALTH]: She was, Your Honor.

THE COURT: —sitting on the stoop gets shot in the head. That is a significant difference between you and the codefendant.

But, again—I will repeat—I judge every case on its merits.

The sentence I gave, I did so after considering your mitigation and did so after considering the fact that you accepted responsibility. Yes, I did look at your infractions, but I also discounted appropriately based upon what your attorney said. I mean, the only thing we really disagree about is in the—is the drug. And you say that it wasn't yours; it was your cellmate. I'm not trying that case here.

N.T. Motion to Reconsider, 8/14/24, at 9-10.

The court then denied the motion on the record. Finally, the court noted

in its Rule 1925(a) opinion that it:

sentenced [Davis] to an aggregate term of twenty to forty years of imprisonment after considering the seriousness of the crime, the protection of the public, the sentencing guidelines, [Davis'] substance abuse, and his rehabilitative needs. After reviewing the presentence and mental health reports, [the trial court] imposed a fair and appropriate sentence considering the brutality of the offense, in which [Davis] brought his sixteen-year-old co-defendant to shoot at a group of people in the middle of the afternoon on a residential street, killing an innocent neighbor on her stoop and striking another in the head.

***

- 9 -

In fashioning its sentence, [the trial court] considered the gravity of the offense, the impact it had on the victims' families, [Davis'] prior criminal record, the fact that this shooting happened right next to a grade school with children nearby, and the fact that [Davis] brought his co-defendant, a sixteen-year-old, to commit the shooting together, as well as all the relevant mitigating factors including [Davis'] age, family support, rehabilitative needs, school record, mental health history, drug abuse, and his acceptance of responsibility by pleading guilty.

After weighing all the relevant factors, [the trial court] arrived at a well-reasoned and just sentence, given the brazen and astounding nature of the crime. The co-defendants shot wildly at a group of six individuals on a residential street. They initiated a firefight in which two innocent neighbors were struck by bullets in the head. At twenty-five years old, [Davis] was significantly older than his sixteen-year-old co-defendant. While [the court] imposed a slightly shorter sentence for the co-defendant, due to his age and status as a minor at the time of the offense, [Davis] was not entitled to the same consideration or relief. Any less of a sentence would denigrate the seriousness of the offense, the horrific and careless nature of the murder, and the danger that [Davis] poses to the public.

Trial Court Opinion, 9/3/24, at 4-6 (footnotes and record citations omitted).

Based upon our review of the record, we cannot find any abuse of discretion. The court took into consideration the co-defendant's lesser sentence and appropriately distinguished Davis when fashioning his sentence. The court considered the mitigating circumstances Davis presented but found that the facts of the crime and Davis's conduct outweighed those mitigating circumstances. The court imposed a guideline range sentence and there is nothing in this record to show the sentence imposed is clearly unreasonable. *See* 42 Pa.C.S.A. § 9781(c)(2). We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/8/2026</u>