J-S06012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER JEREMY BRIDGES | : | |
| | : | |
| Appellant | : | No. 631 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 4, 2024
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000786-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER JEREMY BRIDGES | : | |
| | : | |
| Appellant | : | No. 632 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 4, 2024
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000787-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER JEREMY BRIDGES | : | |
| | : | |
| Appellant | : | No. 707 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 4, 2024
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000788-2022

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: February 21, 2025**

Christopher Jeremy Bridges appeals from the judgment of sentence entered on January 4, 2024, stemming from his convictions on three separate dockets. Bridges challenges the weight of the evidence solely regarding his conviction of second-degree murder[1] and alleges the trial court abused its discretion in sentencing him to 45 ½ to 91 years' incarceration.[2] After careful review, we affirm.

Before we address the merits of this appeal, we note **with extreme displeasure** the Commonwealth's failure to file an appellee's brief, especially given the serious nature of these crimes.  The procedural history of this case included a three-week jury trial of three co-defendants all with multiple dockets. "An appellee is required to file a brief that at minimum must contain a summary of argument and the complete argument for appellee." **Commonwealth v. Pappas**, 845 A.2d 829, 835 (Pa. Super. 2004) (internal quotation marks and citation omitted). In **Pappas**, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." **Id.** We echo that opinion and remind the Commonwealth of its obligation to file an advocate's brief in future appeals.

---

[1] 18 Pa.C.S.A. § 2502(b).

[2] Bridges was a juvenile at the time of offense; therefore, he was not subject to mandatory lifetime incarceration. **See** 18 Pa.C.S.A. § 1102.1(c).

We begin with a very truncated factual history. Bridges was involved in a crime spree in the late summer and fall of 2018. All incidents involved the armed robbery and/or burglary of drug dealers, at the recommendation of cooperating co-conspirator, Chinello Blaski. We provide a more thorough factual history regarding the second-degree murder conviction below, as that is the only conviction Bridges challenges here.

As stated above, Bridges was convicted after a three-week jury trial. Bridges' trial was joined with two co-defendants, Raeshawn McCallum and Destin Dortch. At docket CP-25-CR-0000786-2022, Bridges was convicted of second-degree murder, robbery, conspiracy to commit robbery, burglary, conspiracy to commit burglary, theft by unlawful taking, and possessing instruments of crime.[3] At docket CP-25-CR-0000787-2022, Bridges was convicted of burglary, theft by unlawful taking, criminal trespass, receiving stolen property, and conspiracy to commit burglary.[4] Finally, at docket CP-25-CR-0000788-2022, Bridges was convicted of conspiracy to commit robbery, robbery, burglary, and theft by unlawful taking.[5]

---

[3] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903, 3502(a)(1)(i), 903, 3921(a), and 907(b), respectively.

[4] 18 Pa.C.S.A. §§ 3502(a)(1)(i), 3921(a), 3503(a)(1)(i), 3925(a), and 903, respectively.

[5] 18 Pa.C.S.A. §§ 903, 3701(a)(1)(i), 3502(a)(1)(i), and 3921(a), respectively.

Regarding the conviction of second-degree murder, we gleaned the following factual history from the testimony presented during trial. Phillip Clark, also known as Tony Clark or Tone Clark, was shot to death in his home in early September 2018. When police arrived, the home had been ransacked. Police described the scene as appearing as if someone was looking for something. *See* N.T. Trial, Day 2, 10/20/23, at 65-66.

Co-conspirator Blaski provided the following information to police. Blaski claimed Bridges and co-defendant McCallum approached him looking for people to rob. Blaski suggested Clark, among others, as he knew him as a fellow drug-dealer. Blaski explained Clark sold drugs and frequently robbed other drug dealers as they tend not to call police. Blaski drove Bridges, McCallum and another cooperating co-conspirator, Nicholas Grayson, to Clark's home to see if they could locate a good place to enter the home. Blaski stayed in the car while the other three walked around Clark's house checking windows and other potential entry points. They were unable to locate a good place to enter Clark's house.

Later, Blaski left Grayson, McCallum, and Bridges at his apartment. Blaski left to run an errand and returned to his apartment, expecting to head to Clark's house for the robbery/burglary they had planned. When Blaski returned to his apartment, however, co-defendant Dortch was present. Blaski said McCallum and Bridges invited Dortch over as he is the "go-to guy for getting into residences." N.T. Trial, Day 3, 10/23/23, at 28. Grayson stayed

behind while the other four went to Clark's house. Blaski was the get-away driver and stayed in the car while Bridges, McCallum, and Dortch broke into Clark's house.

When the three got back into Blaski's waiting car, they were excited. Blaski explained the three were talking about shooting Clark. Blaski told police that was not part of the plan, and he was upset at the three for shooting Clark during the planned robbery/burglary. Blaski described McCallum as the first to say he shot Clark, claiming that Dortch tried to "steal his body." N.T. Trial, Day 3, 10/23/23, at 45. Blaski clarified that Dortch tried to shoot Clark, but his gun jammed. Blaski said Dortch and McCallum were acting like it was a joke or a game. Bridges joined in the conversation by saying he tried to shoot Clark, too, but his gun also jammed.

Police obtained Facebook posts and messages corroborating the information provided by Blaski and Grayson. Ballistics evidence did not connect Bridges to the murder of Clark, but did match another shooting involving co-defendant McCallum.

The jury convicted Bridges as noted above. On January 4, 2024, Bridges was sentenced to an aggregate 45 ½ to 91 years' incarceration, which included 35 to 70 years' incarceration for second-degree murder, a consecutive term of 36 to 72 months' incarceration for burglary, and a consecutive term of 90 to 180 months' incarceration for robbery. All other charges ran concurrently or merged for sentencing purposes.

Bridges filed a post-sentence motion and a timely appeal. He complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b). Bridges raises two issues for our review:

[1.] Was the verdict in this case [] against the weight of the evidence and/or the evidence presented was insufficient to prove that [Bridges] committed the crimes in question, especially as it relates to second[-]degree murder?

[2.] Was the period of incarceration ordered in this case manifestly excessive and clearly unreasonable, based on [Bridges'] youthful age, his acknowledgment of the victim's family at the time of sentencing, and a low prior record score?

Appellant's Brief, at 2-3.

Although Bridges' question presented seems to assert both a challenge to the weight of the evidence and the sufficiency of the evidence, his argument section only addresses the weight of the evidence claim. **See id.** at 13-16. Bridges argues the testimony of his conspirators was "self-serving" and should not have been believed. **See id.** at 13-14.

We remind counsel that weight and sufficiency claims are distinct. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (discussing the differences between weight and sufficiency claims). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).

Further, "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any

other meaningful fashion capable of review, that claim is waived."

***Commonwealth v. Armolt***, 294 A.3d 364, 377 (Pa. 2023) (citations

omitted). As Bridges provides no authority or discussion regarding his

purported sufficiency challenge, we find it waived.[6]

Even if the claim were not waived, Bridges would not be entitled to relief.

Our scope and standard of review is as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[6] We note the trial court found Bridges' sufficiency claim waived for failing to state which elements the Commonwealth did not prove in his Rule 1925(b) statement. ***See*** Trial Court Opinion, 7/26/24, at 6-7. We agree with the trial court this claim would be waived on this basis as well, even if Bridges presented this Court with any argument supporting it. ***See Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) (noting a Rule 1925(b) statement must specify what element or elements were insufficient to be preserved for review).

*Commonwealth v. Bowen*, 55 A.3d 1254, 1260 (Pa. Super. 2012) (citation and brackets omitted).

Bridges challenges his conviction for second-degree murder. "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). Both robbery and burglary are included in the definition of "perpetration of a felony." *See* 18 Pa.C.S.A. § 2502(d). The evidence was clearly sufficient to show Bridges planned to commit, at the very least, a burglary of Clark's home. He participated in the discussions, the reconnaissance, and proceeded to Clark's home armed with a firearm. Whether or not Bridges tried to shoot Clark is irrelevant. Clark was shot and killed during the perpetration of the planned burglary. Therefore, even if this claim were not waived, Bridges would not be entitled to relief.

Bridges argues his conviction for second-degree murder is against the weight of the evidence because cooperating co-conspirator Blaski's testimony should not be believed. *See* Appellant's Brief, at 13-16.

We note "appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Wright*, 314 A.3d 515, 524 (Pa. Super. 2024) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the

gravest consideration to the findings and reasons advances by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* (citation omitted).

Here the trial court explained its reasons as follows:

Initially, the [trial c]ourt would note that testimony of co-conspirators presented on behalf of the Commonwealth can almost always be viewed as "self-serving." It should be noted that the [c]ourt did provide the standard jury instruction on accomplice testimony [in] which the jury was instructed that the testimony of a co-conspirator/accomplice testifying on behalf of the Commonwealth should be viewed with great caution. A review of the transcripts also indicates that Commonwealth witnesses Chinello Blaski and Nick Grayson were subjected to intense cross-examination from all three experienced defense counsel. All three defense counsel attacked the credibility of the testimony of those co-[conspirators] as a core part of their defenses. However, the jury was well within its province to rule on those issues of credibility and apparently resolved some, if not most, of those issues in favor of the Commonwealth witnesses.

\* \* \*

As the Commonwealth noted[,] the evidence showed another co-defendant actually fired the weapon that killed Mr. Clark. However, there was also sufficient evidence, both in terms of quality and quantity, to show that [Bridges] was present, participated, was an accomplice and/or conspirator in the burglary and/or robbery. Therefore, there was more than sufficient evidence to establish his liability as applied to second[-]degree homicide and to allow the jury to find that the Commonwealth had proven his guilt beyond a reasonable doubt.

Finally, the [c]ourt is mindful of the issue as to the "weight of the evidence" that has also been raised. … The verdict of this jury was definitely supported by the combined weight of the direct

and circumstantial evidence of [Bridges'] participation in the felony murder of Phillip Clark.

Th[e trial c]ourt had the benefit of presiding over the lengthy trial in this case and seeing the evidence[,] which was presented in various forms, and heard and observed the testimony of various Commonwealth witnesses, including the two individuals previously named, whose credibility was vigorously and appropriately attacked by defense counsel. As indicated previously, the jury was well within its province in determining that the testimony of Chinello Blaski and Nicholas Grayson was credible. As the Commonwealth also pointed out, the case did not rest solely on the credibility of their testimony. Th[e trial c]ourt finds that there was more than sufficient corroboration with the other evidence presented to support their credibility. The verdicts were not tenuous, vague, or uncertain so as to shock the conscience of th[e trial c]ourt. …

Trial Court Opinion, 7/26/24, at 9-12.

We discern no abuse of discretion in the trial court's decision. The Commonwealth presented evidence showing Bridges was involved in two prior burglaries and robberies before the planned Clark burglary. Bridges brought his own firearm to these burglaries, including the Clark burglary. The jury was permitted to find the cooperating co-conspirator's testimony credible, and we cannot re-weigh the evidence or substitute our judgment for that of the jury. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) ("An appellate court cannot substitute its judgment for that of the finder of fact.") (citation omitted). This claim does not merit relief.

In his final issue, Bridges argues the sentence was manifestly excessive because the trial court did not consider mitigating circumstances such as "his

lack of a serious prior criminal history, his age, and the fact that he was not the individual who initiated the crimes in this case." Appellant's Brief, at 4.

Bridges' claim is a challenge to the discretionary aspects of his sentence.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
>> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

*Commonwealth v. Summers*, 245 A.3d 686, 691 (Pa. Super. 2021) (citation omitted).

Bridges met the first three requirements. He filed a timely notice of appeal and post-sentence motion seeking to modify his sentence. Included in his brief is a Rule 2119(f) statement of reasons relied upon for allowance of appeal. Therefore, we determine if Bridges has raised a substantial question.

A substantial question is raised when an appellant "sets forth a plausible argument that the sentence violates a provision of the Sentencing Code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Bullock*, 170 A.3d 1109, 1122 (Pa. Super. 2017) (citation and brackets omitted). This Court "cannot look beyond the statement

of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Reid***, 323 A.3d 26, 30 (Pa. Super. 2024) (citation omitted).

In his Rule 2119(f) statement, Bridges argues his sentence violated a fundamental norm because it was manifestly excessive and not individualized. ***See*** Appellant's Brief, at 3. He further argues the trial court failed to consider mitigating circumstances. ***See id.*** at 4. This raises a substantial question. ***See Commonwealth v. Glawinski***, 310 A.3d 321, 325 (Pa. Super. 2024) (observing a claim that a sentence is manifestly excessive and not individualized raises a substantial question).

We therefore turn to the merits of Bridges' claim. We review a challenge to the discretionary aspects of sentencing for an abuse of discretion. ***See Commonwealth v. Seagreaves***, 103 A.3d 839, 842 (Pa. Super. 2014). "When, as here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." ***Id.*** (citation omitted).

Bridges concedes his sentence was within the standard range for each offense. ***See*** Appellant's Brief, at 16. As such, we are guided by the statutory mandate of section 9781(c)(2): "The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds: … the sentencing court sentenced within the guidelines but the case involves

circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2).

Bridges asserts his young age (16-years-old) at the time of the offenses, combined with the fact that the co-defendants were all older justified a lesser sentence. **See** Appellant's Brief, at 17. He also notes that he was the only defendant at the combined sentencing hearing with his two co-defendants that addressed the family of the victim and expressed remorse for his actions. **See id.** He believes a "lighter sentence could have supported the needs of restitution, rehabilitation, and protection of the community." **Id.** at 18. We disagree.

The trial court clearly considered these factors at sentencing. **See** N.T. Sentencing, 1/4/24, at 82-85. Relevantly, the trial court stated during sentencing:

> The jury's verdict speaks for itself. The guidelines which are applicable here speak for themselves. And again, the legislature, the people that prepared the guidelines, have determined that regardless of the exact level of participation in a felony murder, that a mandatory minimum sentence of at least 30 years has to be imposed for someone who's under the age of 18. And if the person is over the age of 18 and they're convicted of felony murder, it's life.
>
> But again, in light of Mr. Bridge's age at the time, I do have the discretion to go under life and I've already indicated I'm not going to impose life. That leads me — or leads us to what is the appropriate sentence here.
>
> Mr. Bridges, you are of the three the youngest. Not by much, but you are. And that does make a difference, maybe a small difference but a difference. And, again, no one has to speak at a sentencing proceeding. Everybody has a right to pursue their

appeals. And therefore, I do not hold it against someone, most of the time, if they don't speak.

But I also will note, as your attorney pointed out that I'll note again, that of the three individuals that I've sentenced here this morning for these incredibly, serious, horrible offenses, you're the only one that attempt—I shouldn't say attempted. You're the only one that spoke to the families. That's a small factor too, but nevertheless it's worth noting.

You had been involved with guns as a juvenile. You got involved with guns again after these incidents and received a state sentence. I don't know a lot about your upbringing that Attorney Lightner and Attorney Clelland had referred to, well, except the fact that you have had some benefits in your life that brought you — you chose not to take advantage of.

Although you are the youngest, you were directly involved in all three of these incidents. And you were willing, ready and able to participate and did participate through the definition of felony murder and the horrible events of September 4th.

As in every case, I'm required to determine the impact of the offenses on the community, which was incredible significant, these series of events; the impact upon the victim and the victims' family; and a defendant's rehabilitative potential. Your involvement with the guns both before and after this incident concerns me greatly. I'm going to fashion a sentence that will impose a significant punishment, but if you are truly able to be rehabilitated, we'll give you the chance of being paroled many, many years from now, but we'll leave that possib[ility] open.

N.T. Sentencing, 1/4/24, at 82-84.

The trial court carefully considered all mitigating factors, and its sentence is not clearly unreasonable given the facts of the three cases tried before it. The record shows the trial court was aware of the pre-sentence investigation and considered the fact that Bridges was the youngest, but did have a firearm on these three occasions and for other incidents both before

- 14 -

and after these charges, of which he was convicted. The trial court was validly concerned about Bridges' continued involvement with firearms before he turned 18, but still imposed a sentence that allows him to obtain parole and become a productive member of society. We therefore find no abuse of discretion in the sentence imposed.

Because Bridges' claims are all meritless or waived, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/21/2025